**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MANCHESTER UNITED FOOTBALL CLUB LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 26-cv-14139 |

**COMPLAINT**

Plaintiff Manchester United Football Club Limited ("MUFC" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including apparel and other products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Unauthorized Products"). Plaintiff MUFC is a professional football club participating in the English Premier League ("EPL" or "Premier League") which is the top level of the English football league system. In collaboration with Premier League, Plaintiff has established a program of trademark protection and enforcement. Premier League and Plaintiff regularly investigates suspicious e-commerce stores and enforce their trademark rights to prevent the sale of Unauthorized Products.

4. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their infringement operation. Plaintiff is forced to file this action to combat Defendants' infringement of its registered trademarks, as well as to protect unknowing

consumers from purchasing Unauthorized Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff Manchester United Football Club**

5. Plaintiff Manchester United Football Club Limited ("MUFC" or "Plaintiff") is a professional football club that competes in the Premier League with its principal place of business in Old Trafford, Greater Manchester, England.

6. MUFC is, in part, engaged in the business of producing, manufacturing, and distributing throughout the world, including within this judicial district, premium athletic apparel, accessories, and other products under federally registered trademarks. For generations, MUFC has been one of the undisputed leaders in the field of apparel and accessories, including those which prominently display the famous, internationally recognized, and federally registered trademarks of MUFC (collectively, the "MUFC Products").

7. MUFC Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design. Among the purchasing public, genuine MUFC Products are instantly recognizable as such. In the United States and around the world, MUFC's brand has come to symbolize high quality and MUFC Products are among the most recognizable in the world. In 2024, MUFC was ranked by Forbes magazine as the world's second-most-valuable football club, valued at $6.55 billion.[2]

[2] https://www.forbes.com/lists/soccer-valuations/.

8. MUFC Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as DICK's Sporting Goods and other sporting goods stores, and through the official manutd.com website.

9. MUFC incorporates a variety of distinctive marks in the design of its various MUFC Products. As a result of its long-standing use, MUFC owns common law trademark rights in its MUFC trademarks. MUFC has also registered its trademarks with the United States Patent and Trademark Office. MUFC Products typically include at least one of MUFC's registered trademarks. Often several MUFC marks are displayed on a single MUFC Product. MUFC uses its trademarks in connection with the marketing of its MUFC Products, including the following registered marks which are collectively referred to as the "MUFC Trademarks."

| **Registration No.** | **Trademark** |
|---|---|
| 2,864,029<br>5,029,049 | MANCHESTER UNITED |
| 4,797,705 | MUFC |
| 5,905,684 | MAN UNITED |
| 5,847,510 | MAN UTD |
| 6,104,053 | I LOVE UNITED |
| 3,369,663 | MU |
| 2,556,390<br>3,214,435<br>4,214,045<br>4,929,771 | |

| Registration No. | Trademark |
|---|---|
| 4,843,297<br>5,663,479<br>5,887,591 | |
| 5,303,910 | |
| 5,809,198 | |
| 5,899,493 | |

10. The above registrations for the MUFC Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The MUFC Trademarks have been used exclusively and continuously by MUFC and have never been abandoned. The registrations for the MUFC Trademarks constitute *prima facie* evidence of their

validity and of MUFC's exclusive right to use the MUFC Trademarks pursuant to 15 U.S.C. § 1057(b). Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the MUFC Trademarks included in the above table.

11. The MUFC Trademarks are exclusive to MUFC and are displayed extensively on MUFC Products and in MUFC's marketing and promotional materials. Typically, one or more of the MUFC Trademarks are included on MUFC Products. MUFC Products have long been among the most popular of their kind in the world and have been extensively promoted and advertised at great expense. In fact, MUFC has expended millions of dollars annually in advertising, promoting, and marketing featuring the MUFC Trademarks. MUFC Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired items. Because of these and other factors, the MUFC name and the MUFC Trademarks have become famous throughout the United States.

12. The MUFC Trademarks are distinctive when applied to the MUFC Products, signifying to the purchaser that the products come from MUFC and are manufactured to MUFC's quality standards. Whether MUFC manufactures the products itself or licenses others to do so, MUFC has ensured that products bearing its trademarks are manufactured to the highest quality standards. The MUFC Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the MUFC Trademarks is of incalculable and inestimable value to MUFC.

13. For many years, MUFC Products have been promoted and sold at the official manutd.com website. Sales of MUFC Products via the manutd.com website are significant. The manutd.com website features proprietary content, images, and designs exclusive to MUFC.

14. MUFC's innovative marketing and product designs have enabled MUFC to achieve widespread recognition and fame and have made the MUFC Trademarks some of the most well-

known marks in the industry. The widespread fame, outstanding reputation, and significant goodwill associated with the MUFC brand have made the MUFC Trademarks valuable assets of MUFC.

15. MUFC has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the MUFC Trademarks. As a result, products bearing the MUFC Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from MUFC. MUFC is a multi-million-dollar operation and MUFC Products have become among the most popular of their kind in the world.

**The Defendants**

16. Defendants are individuals and/or business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

17. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringement network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

18. The success of Plaintiff's brand has resulted in significant infringement and counterfeiting of its trademarks. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Unauthorized Products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in infringing and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[3] The primary source of all those infringing goods, the OECD and others say, is China.[4]

19. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[5] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[6] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear

[3] *See* Press Release, Organization for Economic Cooperation and Development, Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.
[4] *Id.*; *See also* Intellectual Property Rights Seizure Statistics, Fiscal Year 2024, U.S. Customs and Border Protection.
[5] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
[6] Combating Trafficking in Counterfeit and Pirated Goods, *supra* note 5, at 22.

unrelated even though they are commonly owned and operated.[7] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[8]

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and, on information and belief, have sold Unauthorized Products to residents of Illinois. Screenshots evidencing Defendants' infringing activities are attached as **Exhibit 2**.

21. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars from U.S. consumers. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the MUFC Trademarks, and none of the Defendants are authorized retailers of genuine MUFC Products.

22. Many Defendants also deceive unknowing consumers by using the MUFC Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MUFC Products. Other e-commerce stores operating under Seller Aliases omit using the MUFC Trademarks in the item title to evade enforcement efforts while using

---

[7] *Id.* at 39.
[8] Chow, *supra* note 5, at 186-87.

strategic item titles and descriptions that will trigger their listings when consumers are searching for MUFC Products.

23. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

24. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringement operation, and to avoid being shut down.

25. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

26. E-commerce store operators like Defendants communicate with each other on chat rooms and through websites regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

27. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move

funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

28. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the MUFC Trademarks in connection with the advertisement, distribution, offering for sale, and/or sale of Unauthorized Products into the United States and Illinois over the Internet.

29. Defendants' unauthorized use of the MUFC Trademarks in connection with the advertising, distribution, offering for sale, and/or sale of Unauthorized Products, including, upon information and belief, the sale of Unauthorized Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

30. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered MUFC Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The MUFC Trademarks are highly distinctive marks. Consumers have come to

expect the highest quality from MUFC Products offered, sold, or marketed under the MUFC Trademarks.

32. Upon information and belief, Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using infringing and counterfeit reproductions of the MUFC Trademarks without Plaintiff's permission.

33. Plaintiff is the exclusive owner of the MUFC Trademarks. Plaintiff's United States Registrations for the MUFC Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the MUFC Trademarks and are willfully infringing and intentionally using counterfeits of the MUFC Trademarks. Defendants' willful, intentional, and unauthorized use of the MUFC Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

34. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the MUFC Trademarks.

36. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

37. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized Products by Plaintiff.

39. By using the MUFC Trademarks in connection with the sale of Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

40. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of infringing and counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of Plaintiff's brand.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using the MUFC Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine MUFC Product or is not authorized by Plaintiff to be sold in connection with the MUFC Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine MUFC Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the MUFC Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the MUFC Trademarks and damaging Plaintiff's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the MUFC Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the MUFC Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement

of the MUFC Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the MUFC Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 13th day of November 2026.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jennifer V. Nacht
Jennifer M. Younan
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jnacht@gbc.law
jyounan@gbc.law

*Counsel for Plaintiff*
*Manchester United Football Club Limited*